UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

MANUEL GONZALEZ-GONZALEZ,

    **Plaintiff**,

           **v.**                        **Crim. No.** 93-318 (FAB)

UNITED STATES OF AMERICA,

    **Defendant.**

**AMENDED OPINION AND ORDER**

BESOSA, District Judge.

    Plaintiff Manuel Gonzalez-Gonzalez brings this pro se action against the United States of America ("the government"), seeking the return of property seized as part of a criminal investigation. (Docket Nos. 739, 745)  The government asserts that the property was validly forfeited and that laches bars this motion.  (Docket No. 837)

**I.**

**Factual and Procedural Synopsis**

    Plaintiff Gonzalez was indicted for conspiracy, substantive drug offenses, and money laundering on September 29, 1993. Docket No. 837.  On October 5, 1993, the government seized two automobiles belonging to Gonzalez from two separate locations alleging that they were property used to facilitate sales of controlled substances.  <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31, 33 (1st Cir. 2001).  At the time of the seizures, the government personally delivered written notice of the seizure, impending

Crim. No. 93-318 (FAB)                                                        2
_____

forfeiture proceedings, and methods to contest forfeiture to Jose A. Garcia Muñiz and Ricardo Alba, who were in possession of the two automobiles, and obtained their signatures acknowledging receipt of the written notice.  Docket No. 837-2, Exs. A, B.  The government also sent written advice of impending forfeiture proceedings by mail to the addresses of the vehicles' registrants of record.  Id. In addition, the government published notices in a newspaper for three consecutive weeks, on February 13, February 20, and February 27, 1994.  Id.  The vehicles were declared forfeit on April 20, 1994.  Gonzalez-Gonzalez, 257 F.3d at 34.

   Gonzalez was not apprehended until August 10, 1994 in Florida. Id. at 34; Docket No. 837.  Government surveillance of Gonzalez's known residence on Wilson Street in the Condado in the summer and fall of 1993 had failed to locate him.  Docket No. 837-3, Ex. G at 11-12.  At trial in February 1996, Gonzalez disclosed that he had left Puerto Rico with his current wife for Florida in late 1993. Docket Nos. 837-3, Ex. H at 5.  He further testified that, prior to leaving Puerto Rico, he had lived at his former wife's house and at two other apartments that had been under surveillance, including the one on Wilson Street.  Docket Nos. 837-1, 837-3, Ex. H at 2-3. There is some evidence, however, that government agents learned of Gonzalez's whereabouts in late 1993 in Florida after his indictment in this case.  (Order for Detention without Bail, Sept. 6, 1994.)

Crim. No. 93-318 (FAB)                                                    3

Testimony at trial revealed that Gonzalez had ordered his co-conspirators to register the vehicles under false names to addresses on Wilson Street.  Docket No. 837-2, Exs. A, B, C. Gonzalez denied these commands at trial, but his testimony was internally inconsistent.  Docket No. 837-3, Ex. H at 4-6.  At any rate, the two automobiles appeared to have been routinely used in furtherance of Gonzalez's drug conspiracy.  Docket No. 837-2, Ex. D at 2-3.

On July 20, 1999, Gonzalez moved for the return of the forfeited vehicles pursuant to Federal Rule of Criminal Procedure 41(e),[1] alleging inadequate notice of forfeiture.  Docket No. 739. Treating Gonzalez's motion as a civil complaint, we dismissed his suit <u>sua sponte</u> and without opinion, on August 18, 1999.  (Endorsed Order, Aug. 18, 1999.)  On July 23, 2001, the First Circuit Court of Appeals required this Court to determine the reasonableness of the government's notice to Gonzalez prior to forfeiture.  <u>Gonzalez-Gonzalez</u>, 257 F.3d. at 34.  After some delay, Judge Perez-Gimenez recused himself on July 28, 2008.  Docket Nos. 835, 836.  The government responded on August 22, 2008.  Docket No. 838.

**II.**

**<u>Sua Sponte Summary Judgment under Rule 56(c)</u>**

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

[1]   Currently, Fed.R.Crim.P. 41(g).

that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is "genuine" if it can be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In rare circumstances, we may grant summary judgment sua sponte, provided that discovery is sufficiently advanced for the court to determine the existence of issues of material fact adequately, and that the target has sufficient notice, at least ten days, to present all evidence on the essential elements of its claim or defense. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Stella v. Town of Tewksbury, 4 F.3d 53, 55-56 (1st Cir. 1993). Of course, our "power to grant summary judgment sua sponte should be used with great circumspection," and the ten-day "notice requirement is not mere window dressing." Stella, 4 F.3d at 55; see also Donate-Romero v. Colorado, 856 F.2d 384, 387 (1st Cir. 1988).

We may grant summary judgment sua sponte if we "find, after studying the parties' evidentiary proffers and giving the benefit of reasonable doubt to those against whom the motion is directed, that there is no genuine issue of material fact in dispute and that the [prevailing party] is entitled to judgment as a matter of law."

Crim. No. 93-318 (FAB)                                                    5

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); accord Stella, 4 F.3d at 55.

The opposing party must then adduce sufficient evidence to avoid summary judgment. See Stella, 4 F.3d at 56. The opposing party, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). Naturally, the prevailing party is entitled to judgment as a matter of law if "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 331.

### III.

### Analysis

Gonzalez claims that he is entitled to the return of his property because he alleges that the government's failure to give reasonable notice violated his right to due process. Docket No. 739. The government denies liability by asserting it provided adequate written advice at the time of seizure. Docket No. 837. Furthermore, the government interposes two affirmative defenses: Gonzalez's actual notice and laches. Id. We discuss these matters in turn, and conclude that summary judgment is appropriate because the government provided written notice and because Gonzalez had actual knowledge of the forfeiture.

**A.   Adequacy of Written Notice**

Gonzalez asserts that the government furnished insufficient notice to sustain the forfeiture of his vehicles. Docket No. 739. He alleges on the basis of testimony at trial that "the F.B.I. always knew where [he] was living" while he remained a fugitive.[2] Docket No. 745.

### 1. Reasonable Notice

Pursuant to 21 U.S.C. § 881(a)(4), the government may seize property used for distribution of illegal drugs. Administrative forfeiture requires publication of notice in a newspaper for three consecutive weeks, and delivery of written notice to "each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75. Criminal defendants may collaterally attack the forfeiture for constitutional deficiency under Federal Rule of Criminal Procedure 41(g), and the district court will treat the matter as a civil bill in equity under 28 U.S.C. § 1331. United States v. Mosquera, 845 F.2d 1122, 1125-26 (1st Cir. 1988); accord United States v. Marolf, 173 F.3d 1213, 1216 (9th Cir. 1999).

At a minimum, the Fifth Amendment requires that a person at risk of serious loss be given notice and a fair opportunity to be heard. Matthews v. Eldridge, 424 U.S. 319, 348 (1976). In other words, "notice [must be] reasonably calculated, under all the

---

[2] Gonzalez points to no particular segment of testimony in support of his allegation.

Crim. No. 93-318 (FAB)                                                         7
_____

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Generally, notification is legally defective if the government knows that initial delivery has failed and is aware of the owner's actual location, but fails to give proper notice. Jones v. Flowers, 547 U.S. 220, 229-31 (2006).  Unless administrative procedures account for new information acquired after initial notification, however, reasonableness is assessed only from the ex ante situation, i.e., facts known to authorities when notices were sent, not facts learned afterwards.  Id. at 231. Although reasonable notice extends even to fugitives from the law, United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995), "[t]he touchstone is reasonableness," and "a pragmatic approach to issues of notice" should be taken.  Gonzalez-Gonzalez, 257 F.3d at 36.

     Under the facts in this case, the government need not have furnished personal notice to Gonzalez while he remained a fugitive from the law.  First, the government insists that it did not know Gonzalez's actual location when it initiated forfeiture, even though he lived on a farm in Puerto Rico.  Docket No. 837-1, 837-2, 837-3, Exs. D, G, H at 2-3.  Gonzalez stated at trial that the farm was owned in part by his ex-wife, but that they had lived apart for 14 years.  Docket No. 837-3, Ex. H at 2-3.  We do not fault the government for failing to detect Gonzalez's presence on the farm

after such lengthy separation.  At best, government witnesses at trial could place Gonzalez at one of his apartments in Puerto Rico on a single occasion well before August 1993, at least two months before the seizures.  Docket No. 837-3, Ex. G at 6-8.  A one-time sighting during the course of intensive surveillance, however, hardly suggests that Gonzalez resided there.

Secondly, the government substantially complied with 19 U.S.C. § 1607(a) because it published the notice of forfeiture, posted the written advice to the vehicles' registrants of record by certified mail, and personally delivered the written notice to the persons in possession of the two vehicles when they were seized.  Docket No. 837-2, Exs. A, B.  The two persons in possession acknowledged receipt of the written notice by signature.  Id.  If written advice was incorrectly sent to fictitious registrants, Gonzalez has no one but himself to blame because he commanded his associates to falsify documentation to disguise the automobiles' true ownership.  Id., Ex. C at 19-20.  By seeking return of his vehicles, Gonzalez admits that he is the actual owner of the property, and the persistent use of such property in his criminal enterprise demonstrates that he retained control over the vehicles via deputies.  See Id., Ex. D at 2-3.  Because Gonzalez deputized his co-conspirators to hold the automobiles under false registrations, notices delivered to these

Crim. No. 93-318 (FAB)                                                9
_____

agents in crime are reasonable and sufficient under the circumstances.[3]

### 2. **Ex Ante Reasonableness**

Although there is some ambiguity as to whether some government agents were aware of Gonzalez's location after he left Puerto Rico, written advice delivered by other means was reasonable for pragmatic reasons. Again, we consider sufficiency of notice from an ex ante perspective. Jones, 547 U.S. at 231.

Testimony at Gonzalez's initial bail hearing mentioned that government agents waited to arrest him pending indictment in another large drug conspiracy. (Order for Detention without Bail, Sept. 6, 1994.) An agent in Florida became aware in late 1993 that Gonzalez was a fugitive from both an earlier conviction in Florida and the indictment in this case. Id. The agent's latter knowledge of the indictment, which was unsealed prior to seizure of the two vehicles, however, reveals that his encounter with Gonzalez postdates the delivery of notices to Gonzalez's deputies. As indicated above, notification of agents in possession of property at the time of seizure was reasonable. Facts acquired later are irrelevant to this analysis. Furthermore, the government cannot jeopardize pending criminal investigations by attempting actual notification of forfeiture and thereby warn a fugitive of his imminent arrest.

_____

[3] See, infra, discussion on actual knowledge.

### 3. **Fugitive from Justice Doctrine**

From an equitable perspective, Gonzalez's fugitive status weighs against additional effort by the government to insure his actual knowledge of the forfeiture proceedings. Traditionally, equity penalizes fugitives by barring subsequent challenges to administrative forfeitures where the civil case is "closely related to the criminal matter in which the applicant is a fugitive." United States v. Schiavo, 897 F. Supp. 644, 648-49 (1st Cir. 1995) (citing United States v. Pole No. 3172, 852 F.2d 636, 643 (1st Cir. 1988)). More recent decisions have refined this rule to apply to motions under Federal Rule of Criminal Procedure 41 where the applicant's fugitive status causes prejudice to the opponent, delay, frustration, or unenforceability of a decision to return property. Degen v. United States, 517 U.S. 820, 823-29 (1996); accord Walsh v. Walsh, 221 F.3d 204, 214-15 (1st Cir. 2000). Subsequent legislation has not precluded resort to the equitable doctrine; rather, it grants explicit authority to reject bills lodged by fugitives who know or receive notice of outstanding warrants against them. See 28 U.S.C. § 2466 (enacted in 2000). Even if the statute displaces traditional doctrine, cf. id., both law and equity continue to disfavor fugitives for purposes of personal notice. See Collazos v. United States, 368 F.3d 190, 198-200 (2d Cir. 2004). The government did not need to expend efforts greater than the norm to locate Gonzalez when he sought not

Crim. No. 93-318 (FAB)                                                11

to be found.  Testimony at trial suggested that Gonzalez purposely eluded capture around the time of the seizures by moving constantly and eschewing fixed telephone numbers.  Docket No. 837-3, Ex. E at 17.  Of course, this does not conclusively show Gonzalez's awareness that he was wanted in Puerto Rico in this case, rather than for his earlier conviction in Florida.  Cf. 28 U.S.C. § 2466(a) (disentitled fugitive must purposely avoid jurisdiction of federal district from which he is fugitive).  Nevertheless, Gonzalez's affirmative steps to evade justice prejudices the government by frustrating efforts to advise him in Puerto Rico, whether by mail to registrants of record, or by personal service to possessors of the two vehicles.  Even if Gonzalez's motion is not barred by the equitable doctrine, the government needs to do no more when it has satisfactorily attempted to notify a fugitive by other means.

   Gonzalez has failed to demonstrate patent unreasonableness of the government's efforts at affording him an opportunity to contest the forfeitures.  He can hardly blame the government when he essayed to thwart detection and elude arrest.  We reject the implicit suggestion that the government must alert a fugitive of pending civil forfeiture when it later discovers him, and thereby spoil the element of surprise in apprehending co-conspirators and seizing evidence.  Written advice delivered to persons in

Crim. No. 93-318 (FAB)                                                      12
_____

possession of Gonzalez's fraudulently registered vehicles was both reasonable and sufficient under the circumstances.

**B.   <u>Actual Knowledge of Forfeiture</u>**

Although owners at risk of forfeiture must receive reasonable notice of the proceedings, if a fugitive has been apprised of impending forfeiture from other sources, failure to deliver notice to his known residence is excused. <u>See</u> <u>Whiting v. United States</u>, 231 F.3d 70, 74 (1st Cir. 2000); <u>see also</u> <u>Giraldo</u>, 45 F.3d at 511 (actual notice required for forfeiture proceeding). "[A] pragmatic approach to issues of notice" is particularly appropriate where a fugitive has actual knowledge of the forfeiture. <u>Gonzalez-Gonzalez</u>, 257 F.3d at 36.

Under general principles of agency, the knowledge of an agent of matters within his scope of employment is imputable to his principal, unless he acts adversely to his principal or for another's interests. <u>See, e.g.,</u> <u>Evanston Bank v. Conticommodity Servs., Inc.</u>, 623 F. Supp. 1014, 1034, 1036 (D.Ill. 1985). Because there is no federal common law, <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64,

Crim. No. 93-318 (FAB)                                                    13
_____

78 (1938), the Civil Code of Puerto Rico must supply the substantive law of agency, P.R. Laws Ann. tit. 31, §§ 4421-88.[4]

The Civil Code provides for implied agencies, which may be inferred from acts of the putative principal and agent. Id. § 4422; Waterman Exp. Corp. v. Valdejulli, 88 P.R. Dec. 499 (1963). The existence of an agency relationship is an issue of fact determinable by the court by preponderance of the evidence. Bank of N.S. v. Velez Rullan, 91 P.R. 347, 355 (1964). An agent is bound to perform services at the request of his principal, P.R. Laws Ann. tit. 31, § 4421, and the principal implicitly delegates the necessary authority to the agent to administer property that is essential to the agency, Velez Rullan, 91 P.R. at 353-54.

The principal is presumed to control his agent, and therefore respondeat superior applies ex delicto. P.R. Laws Ann. tit. 31, §5142. If a vehicle belongs to a business, its operator is presumed to be a servant of the enterprise acting within the scope of his duties for actions in tort. Gonzalez v. Compania Agricola,

---

[4] There is a dispute as to the proper rule of decision for issues arising from Puerto Rican law. See 28 U.S.C. § 1652; 48 U.S.C. § 734. While the Supreme Court of Puerto Rico has opined that the Civil Code does not contemplate direct analogy to Anglo-American common law, Valle v. Am. Int'l Ins. Co., 8 P.R. Offic. Trans. 735 (1979), we have held the contrary, Rivera v. Flav-O-Rich, 876 F. Supp. 373, 382-84 (D.P.R. 1995) (adopting Restatement (Second) of Agency § 2 cmt. B (1957)). We need not resolve this controversy because the Civil Code suffices to dispose of this case. If, however, we were to follow our previous decision, id. at 832-84, we would endorse Restatement (Third) of Agency § 5.03 (2006) (imputing notice of fact to principal).

Crim. No. 93-318 (FAB)                                                      14

76 P.R. 373 (1954); Gonzalez v. San Luis Transp. Co., 77 P.R. 894 (1955). Vicarious liability extends to apparent authority, where the principal holds out a person as his agent. Berrios Pagan v. Univ. of P.R., 16 P.R. Offic. Trans. 112 n.2 (1985) (citing common-law precedents to attribute tort by apparently authorized agent to his principal).

Pursuant to the Civil Code, a person has knowledge of a fact when he receives notice or has reason to know from facts and circumstances known to him at the time. P.R. Laws Ann. tit. 19 § 451(25)(b)-(c). In the context of agencies, where the conduct of an agent is attributable to his principal by operation of law, Companía Agricola, 76 P.R. at 373, it is reasonable to impute the agent's knowledge of pertinent facts to his principal, as in common-law jurisdictions, Restatement (Third) of Agency § 5.03.

Gonzalez has admitted that other registrants held title to the vehicles in his stead. (Trial Tr. 2309-18, Feb. 13, 1996.) The government's cooperating witness testified that Gonzalez had commanded him to use false names and addresses to register the two automobiles. Docket No. 837-2, Ex. C. Although Gonzalez denied knowledge of fraudulent registrations at trial, id., we found that he committed perjury in light of the fact that the vehicles were repeatedly used in connection with his narcotics enterprise, Docket No. 837-3, Exs. G at 10-11, I at 9-12. Thus, even though Gonzalez's affiliates were in actual possession, the conveyances

were made available for his criminal operations at all times. We find that Jose A. Garcia Muñiz and Ricardo Alba, the persons who were in possession at the time of seizure, Docket No. 837-2, Exs. A, B, were Gonzalez's agents for the purpose of maintaining and operating these two automobiles. P.R. Laws Ann. tit. 31, §§ 4121-22, 5142.

While Gonzalez's knowledge of the seizures is insufficient to obviate notification of forfeiture to his known residences,[5] Gonzalez-Gonzalez, 257 F.3d at 38, there is no doubt that Gonzalez's deputies personally received written notice of impending forfeiture proceedings and ways to contest them, Docket No. 837-2, Exs. A, B. Under principles of agency, notice sent to Gonzalez's agents relating to property interests in the vehicles is imputed to Gonzalez himself.

The fact that Gonzalez remained in contact with his co-conspirators even as he dodged authorities further demonstrates his awareness that his property interests were at stake. Docket No. 837-3, Ex. E at 5-7, 11. In a recorded conversation from November 4, 1993, Gonzalez stated: "They took, do you remember the three cars I told you, they went and they got the three cars, instead of getting the expensive one of the three cars, they took

---

[5] The government prevails even though it repeats its earlier error by urging actual knowledge of seizure, rather than of the forfeiture proceedings, as basis for this affirmative defense. Docket No. 837.

Crim. No. 93-318 (FAB)                                                16
_____

the one you thought was the one, do you remember." Id. at 4-5. When asked about this exchange, a witness testified that Gonzalez was referring to the seized Corolla and Montero that had been used to transport proceeds from Gonzalez's criminal enterprise. Id.; Docket No. 837-2, Ex. D.  Therefore, Gonzalez's admissions, combined with other testimony, present incontrovertible proof of his actual awareness of the seizures before the declaration of forfeiture, and belie his professed ignorance of the seizures until December 22, 1994, or four months after his arrest. Docket No. 745. Given Gonzalez's detailed knowledge of his co-conspirators's arrests and the seizures on October 5, 1993, Docket No. 837-3, Ex. E at 4-7, it is incredible that he was oblivious to his potential claim for property.[6]

With actual knowledge of impending forfeiture, Gonzalez had 30 days from receipt of the notice of seizure to petition for remission or mitigation. 21 C.F.R. § 1316.80(a). This period expired in December 1993 – while Gonzalez remained a fugitive, but after he had an opportunity to lodge a protest, as indicated in the notice signed by his agents. While we encourage fugitives to surrender to authorities, Gonzalez could have commanded his deputies to challenge forfeiture under their own names, for

---

[6] Even if Gonzalez did not receive a copy of written advice as such, he was certainly "on notice" of a potential claim for his property, which he could have filed but for his intent to avoid authorities.

Crim. No. 93-318 (FAB)                                                17

instance.  If Gonzalez and his cohorts chose not to pursue this remedy for fear of apprehension, it is no fault of the government.

**C.   Laches**

Because we find in favor of the government on the two prior grounds, we need not reach the affirmative defense of laches.  See Docket No. 837.  We note, however, that the government has not made a case for laches.

"[I]n dealing with motions to return property, equitable considerations are at play and a request to recover wrongly-seized property may be barred by laches even where a statute of limitations exists and has been satisfied."  Whiting, 231 F.3d at 75.  To invoke laches, the proponent must show both unreasonable delay by the opponent in raising its claim, as well as resultant prejudice to the proponent.  K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989).

Here, the government has demonstrated inexcusable delay.  Although this action commenced just within the six-year limit, Gonzalez unjustifiably waited three years after his criminal trial, and five and one-half years after the forfeiture, to file his challenge.  Docket No. 739.  Indeed, Gonzalez acknowledges that his attorney used the seizures to mount a "double jeopardy" defense during trial in 1995.  Docket No. 745.  Thus, he had ample opportunity to bring this action under former Federal Rule of Criminal Procedure 41(e) during the principal criminal case.  To

Crim. No. 93-318 (FAB)                                                  18
_____

the extent that Gonzalez's difficulty in bringing this claim was attributable to his efforts to avoid arrest, he alone is to blame.

The government fails to aver, however, what prejudice this delay has occasioned.  See Docket No. 837.  While the government correctly cites a precedent where undue delay led to loss of necessary evidence, it shows no harm here beyond loss of opportunity for judicial forfeiture proceedings in the alternative. Id. (citing Whiting, 231 F.3d at 75).  Because we uphold the administrative forfeiture as reasonable, there remains no prejudice to governmental interests.

In sum, no genuine issue of material fact exists as to Gonzalez's reasonable notification of forfeiture, because the evidence leaves no doubt that the case may only be resolved in favor of the government.  See Calero-Cerezo, 355 F.3d at 19.  The record, which both parties cite, shows that the government gave reasonable written advice to Gonzalez's criminal deputies, who held the vehicles under fraudulent registrations to thwart tracing to Gonzalez.  Secondly, Gonzalez received actual notice under principles of agency.  He fully apprehended an encroachment on his property rights and could have timely protested, but for his wish to avoid justice.  Laches does not attach, however, because the government has not sufficiently alleged prejudice due to Gonzalez's tardiness.  In reply, Gonzalez points to no evidence in opposition apart from his unsupported averments.  This cannot serve.


Crim. No. 93-318 (FAB)                                                19

Fed.R.Civ.P. 56(e)(2).  The United States is entitled to judgment as a matter of law.

## IV.

## Conclusion

Accordingly, we **DENY** Gonzalez's motion for return of forfeited property, Docket No. 739, and **GRANT** summary judgment, sua sponte, against Plaintiff Gonzalez pursuant to Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 10, 2008.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE