IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>**v.**<br><br>MANUEL GONZÁLEZ-GONZÁLEZ [2],<br><br>**Defendant.** | **Criminal No.** 93-318 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Manuel González-González ("González")'s motion for recusal pursuant to 28 U.S.C. sections 144 and 455(a) (respectively, "section 144" and "section 455"). (Docket No. 924.) For the reasons set forth below, González's motion for recusal is **DENIED**.

I.  Background

On September 29, 1993, a grand jury returned an indictment charging González with drug trafficking, conspiracy, and money laundering offenses. (Docket No. 1.) Judge Juan M. Pérez-Giménez presided over González's nineteen-day trial, where "[s]everal witnesses testified that they belonged to González's drug smuggling and money laundering operation." United States v. González-González, 136 F.3d 6, 8 (1st Cir. 1998) ("Co-defendant Luz Mariana-Giraldo testified that she helped González

import 6,500 pounds of marijuana into Puerto Rico."). The jury found González guilty on all counts. (Docket Nos. 552 and 648.)[1] The Court imposed a sentence of life imprisonment. (Docket Nos. 648 and 935.)[2]

**A.    Forfeiture of González's Vehicles**

The United States seized two vehicles belonging to González, "alleging that they were properly used to facilitate sales of controlled substances." González-González v. United States, 581 F. Supp. 272, 275 (1st Cir. 2008). González challenged the forfeiture pursuant to Federal Rule of Criminal Procedure 41(e) ("Rule 41(e)"), arguing that the United States served insufficient

---

[1] The jury convicted González of conspiring to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one), aiding and abetting the possession with intent to distribute marijuana and cocaine in violation of 18 U.S.C. § 2, and 21 U.S.C. § 841(a)(1) (counts two, three and seven), aiding and abetting the importation into the United States and possessing with intent to distribute marijuana and cocaine in violation of 18 U.S.C. § 2, and 21 U.S.C. §§ 952 and 960 (counts four, five and six), and aiding and abetting the laundering of monetary instruments in violation of 18 U.S.C. § 2 and 21 U.S.C. § 1956(a)(1)(B)(i) (counts nine, ten, eleven and twelve). (Docket No. 648.)

[2] The Court imposed a sentence of life imprisonment as to counts one, three and seven, to be served concurrently with a sentence of 40-years imprisonment as to count two, and a sentence of 20-years imprisonment as to counts nine through twelve. (Docket No. 648.)

notice.  (Docket No. 739.)[3]  The Court dismissed González's forfeiture complaint *sua sponte* without a written opinion and before the United States responded.  (Endorsed Order, Aug. 18, 1999.)  González filed a notice of appeal regarding the Court's forfeiture decision.  (Docket No. 777.)

On July 23, 2001, the First Circuit Court of Appeals remanded the forfeiture complaint, instructing the district court to "[determine whether] the government's efforts to notify González of the forfeiture proceedings were reasonable." González-González v. United States, 257 F.3d 31, 39 (1st Cir. 2001).  The mandate, however, "was never received by the District of Puerto Rico."  (Docket No. 830 at p. 1.)  González filed a writ of mandamus.  Id.  Ultimately, the "petition was received by the Clerk of this Court on May 9, 2008."  Id.  The Court ordered the

---

[3] "In 2002, the motion-to-return provision [in Rule 41(e)] was re-designated Rule 41(g).  Courts recognize that case law interpreting former Rule 41(e) generally applies to current Rule 41(g)."  3D Charles Alan Wright *et al.*, Federal Practice and Procedure, § 690 (4th ed. 2016).  Federal Rule of Criminal Procedure 41(g) provides that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Id.  González's Rule 41(e) motion is treated as a civil complaint.  See United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995) ("Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint.") (quoting Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir. 1992)).

United States to answer González's forfeiture complaint no later than July 23, 2008.  Id. at p. 2.[4]

   **B.   The 2008 Motion for Recusal and 2009 Conflict of Interest Allegation**

González moved for recusal on July 28, 2009.  (Docket No. 836.)  According to González, Judge Pérez-Giménez "evinced in this case a bias against the defendant."  (Docket No. 835.)  The Court held that:

> From the exhibits submitted with the [recusal] motion and arguments made therein, this Judge's handling of this case does not trigger the application of 28 U.S.C. 455(a).  However, this Judge will ask [Chief Judge José A. Fusté] to assign this matter to another Judge.

(Docket No. 836.)[5]  The Clerk of the Court reassigned this action to Chief Judge Fusté on September 28, 2008.  (Docket No. 840.)  Chief Judge Fusté ordered González "to adduce additional facts, if any . . . to avoid summary judgment for the United States pursuant to Federal Rule of Civil Procedure 56."  (Docket No. 841.)  Before the deadline for González to do so, Chief Judge Fusté assigned this action to the undersigned judge.  (Docket No. 842) (ordering that "[t]his case will be handled to conclusion by Judge Besosa.")

---

[4] The United States timely answered González's forfeiture complaint.  (Docket No. 837.)

[5] Judge Fusté served as Chief Judge for the United States District Court for the District of Puerto Rico from 2004 to 2011. Federal Judicial Center, History of the Federal Judiciary: Judges, https://www.fjc.gov/history/judges/fuste-jose-antonio (last visited February 27, 2019).

(Fusté, J.).  The undersigned judge has presided over this case since October 2, 2008.  (Docket No. 844.)

After reviewing the record, this Court held that "no genuine issue of material fact exist[ed] as to González's reasonable notification of forfeiture, because the evidence leaves no doubt that the case may only be resolved in favor of the government."  González-González v. United States, 581 F. Supp. 2d 272 (D.P.R. 2008) (Besosa, J.).  González appealed this decision. (Docket No. 855.)

On January 21, 2009, González filed an informative motion.  (Docket No. 858.)  In his motion, González alleged that Chief Judge Fusté "became aware that he had a conflict of interest and recused himself."  Id. at p. 6. González attributed the purported conflict of interest to "some sort of animosity" arising from the motion to recuse Judge Pérez-Giménez.  Id. at p. 5.  The purported conflict of interest, González argued, required Chief Judge Fusté to "[follow] the District Court's electronic case assignment system."  Id. at p. 6.  González averred that Chief Judge Fusté "handpicked Judge Besosa" in contravention of "the statutory command that the disqualified judge be removed from all participation in the case."  Id. at p. 7 (citing 32 Am. Jur. 2d Federal Courts § 557).

The First Circuit Court of Appeals affirmed the Court's forfeiture decision, recognizing that the "government's attempts at notice were reasonable under the circumstances of this case, where [González] was a fugitive trying to hide his location from the government." United States v. De Jesús González-González, No. 09-1076, slip op. at 2 (1st Cir. Aug. 7, 2009). González's conflict of interest argument also proved futile. Id. The First Circuit Court of Appeals concluded that "[t]his challenge [was] raised for the first time on appeal, and no prejudice is alleged." Id. A decade later, González moves for recusal pursuant to sections 144 and 455. (Docket No. 924.)[6]

## II. Applicable Statutes

González invokes sections 144 and 455. (Docket No. 924 (citing 28 U.S.C. §§ 144 and 455.))[7] These statutes enforce the "due process right to be tried before an impartial judge – a fundamental right essential to a fair trial." Mitchell v. Sirica, 502 F.2d 375, 390 (D.C. Cir. 1974); see Tumey v. Ohio, 273 U.S.

---

[6] González's motion to recuse is also a declaration, signed by him under penalty of perjury pursuant to 28 U.S.C. § 1746. (Docket No. 924.)

[7] Because sections 144 and 455 "use similar language, and are intended to govern the same area of conduct, they have been construed in pari materia, and the test of the legal sufficiency of a motion for disqualification is the same under both statutes." United States v. Kelley, 712 F.2d 884, 889-890 (1st Cir. 1983) (holding that "the facts in this case would not create, in the mind of a reasonable person, a reasonable doubt concerning Judge Mazzone's impartiality toward [the defendant]" pursuant to sections 144 and 455).

510, 535 (1927) ("No matter what the evidence was against him, [the defendant] has the right to have an impartial judge"). The allegations contained in González's motion to recuse implicate the integrity of this Court and public confidence in the judiciary. The arguments in support of González's motion to recuse, however, are meritless and unsubstantiated.

### A.   28 U.S.C. section 144

The statute reads, in its entirety:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

Section 144 requires the Court to accept González's affidavit as true, even though it may contain allegations that are false and known to be so by the Court. In re Martínez-Cátala, 129 F.3d 213, 218 (1st Cir. 1997). González must, however, set forth "a firm showing in the affidavit that the [undersigned] judge does

have a personal bias or prejudice" in accordance "with the procedural requirements of [section 144]." Id. at 218 (footnote omitted). Before determining whether recusal is warranted, the "judge *must* pass upon the legal sufficiency of the affidavit." United States v. Giorgi, 840 F.2d 1022, 1034-35 (1st Cir. 1988) (holding that "Judge Pérez-Giménez correctly followed [section 144]; he reviewed the motion and supporting materials and found no legal basis for disqualification therein") (emphasis in original).

**B.   28 U.S.C. section 455**

Section 455(a) directs "[a]ny justice, judge, or magistrate judge of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); In re Martínez-Cátala, 129 F.3d at 220 (holding that "where the appearance of partiality exists, recusal is required regardless of the judge's own inner conviction that he or she can decide the case fairly despite the circumstances") (internal citation omitted); In re Bugler, 710 F.3d 42, 46 (1st Cir. 2013) ("The point under § 455(a) is not [the judge's] actual state of mind at a particular time, but the existence of facts that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for

impartiality.").[8]  To trigger section 455(a), González must present "more than subjective fears, unsupported accusations or unfounded surmise."  In re United States, 158 F.3d 26, 30 (1st Cir. 1998). Recusal is appropriate only when the circumstances "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality."  In re Boston Children's First, 244 F.3d at 167 (internal quotation omitted).

The Court "has a duty not to recuse himself or herself if there is no objective basis for recusal."  In re United States, 441 F.3d 44, 67 (1st Cir. 2006); see United States v. Snyder, 235 F.3d 43, 45 (1st Cir. 2000) ("[U]nder § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise he has a duty to sit.").  "While doubts ordinarily ought to be resolved in favor of recusal, the challenged judge enjoys a margin of discretion."  In re United States, 158 F.3d at 30 (citation omitted).  This discretion exists because "in many cases reasonable deciders may disagree."  In re United States, 666

---

[8] Congress bifurcated section 455, providing for mandatory recusal in subsections (a) and (b).  28 U.S.C. § 455.  González cites only section 455(a). (Docket No. 924.)  Section 455(b)(1) enumerates five circumstances in which disqualification is obligatory, none of which are pertinent to González's motion to recuse.  See e.g., 28 U.S.C. § 455(b)(4) (recusal is mandatory when the presiding judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy").

F.2d at 695. Each case implicating section 455(a) is *sui generis*, requiring a fact-specific analysis. In re Boston Children's First, 244 F.3d at 171; In re United States, 158 F.3d at 31. Ultimately, the question for an appellate court is "not whether it would have decided as did the trial court, but whether that decision cannot be defended as a rational conclusion supported by [a] reasonable reading of the record." In re United States, 666 F.2d at 695.

Both sections 144 and 455 require that González move for recusal "at the earliest moment after acquiring knowledge of the facts providing a basis for disqualification." Córdova-González v. United States, 987 F. Supp. 87, 90 (D.P.R. 1997) (Pérez-Giménez, J.) (citing El Fénix de Puerto Rico v. The M/Y Johanny, 36 F.3d 136, 141 n.6 (1st Cir. 1994) ("[A] litigant who is aware of a potential ground of recusal should not be permitted to sandbag that ground, hoping for a satisfactory resolution, but retaining a ground of attack on the judge's ruling.") (internal citation and quotation omitted); Jones v. Pittsburg Nat. Corp., 899 F.2d 1350, 1356 (3rd Cir. 1990) (finding that a recusal motion filed after entry of an order dismissing the complaint was not timely because "[a]ny other conclusion would permit a party to play fast and loose with the judicial process by 'betting' on the outcome.").

**III. Discussion**

Gonzalez's motion to recuse is unavailing for three reasons: (1) the motion is untimely, (2) the arguments in support of recusal are premised on false assumptions, and (3) opinions and orders issued by the Court are immaterial to the recusal analysis.

**A.   González's Motion to Recuse is Untimely**

González's argument centers on the purportedly improper transfer of this action from Chief Judge Fusté to the undersigned judge.  (Docket No. 924.)  According to González, "Judge Besosa was hand-picked by ex-Judge Fusté" in 2008. Id. at p. 1. Substantial litigation has occurred in the ten years following the transfer of this action to the undersigned judge's docket. (Docket No. 842.)  The First Circuit Court of Appeals affirmed the Court's forfeiture decision.  De Jesús González-González, No. 09-1076, slip op. at 2.  González moved for a reduction in his sentence pursuant to 18 U.S.C. section 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines.  (Docket No. 880.)  The Court denied González's motion to reduce his sentence.  (Docket No. 889.) The First Circuit Court of Appeals vacated and remanded the Amendment 782 matter, however, "so that the district court can provide . . . an explanation for its implicit factual findings." United States v. González-González, No. 16-2259, slip op. (1st Cir. Aug. 16, 2018).

González fails to address the decade-long delay in seeking the undersigned judge's recusal. See United States v. Bravo-Fernández, 72 F. Supp. 2d 178, 183 (D.P.R. 2011) (Besosa, J.) (denying motion to recuse in part because "the materials . . . which form the basis of this recusal motion have been publicly available for 18 years, and if defendant Martínez learned about the apparent conflict of interest 'after the case began,' there is no reason why the issue was not raised before the verdict was reached").[9]  Accordingly, recusal is inappropriate at this late stage because González's motion is untimely.  Although the untimeliness of González's motion is sufficient reason to deny his request, the Court nevertheless addresses the merits of his motion. See Kelley, 712 F.2d at 888.

### B. González Misconstrues the Record

González's motion for recusal is based on an inaccurate rendition of the record.  He contends that Chief Judge Fusté and

---

[9] See also In re IBM Corp., 618 F.2d 923, 933 (2nd Cir. 1980) (affirming denial of motion to recuse "made far too late in this litigation"); Wilner v. University of Kansas, 848 F.2d 1020, 1023 (10th Cir. 1988) ("Granting a motion to recuse many months after an action has been filed wastes judicial resources and encourages manipulation of the judicial process."); United States v. Slay, 714 F.2d 1093, 1094 (11th Cir. 1983) (Because "counsel was aware prior to the hearing on the motion to suppress of the facts which he now contends support a § 455(a) motion," his "disqualification argument is therefore untimely and need not be considered by the Court on appeal"); United States v. Sypher, No. 09-CR-00085, 2010 WL 5393849, at *2 (W.D. Ky. Dec. 22, 2010) (denying motion for recusal as untimely because the defendant failed to "specifically indicate what previously unknown facts she learned, when she became aware of them, or why she waited until nearly two months after the end of her trial to bring them to light.").

Judge Pérez-Giménez recused themselves from this action. (Docket No. 924 at pp. 1—2.) On the contrary, Judge Pérez-Giménez stated explicitly that "[his] handling of this case **does not trigger the application of 28 U.S.C. 455(a)**." (Docket No. 836) (emphasis added). Chief Judge Fusté transferred this action in accordance with Judge Pérez-Giménez's request to "assign this matter to another Judge." Id. There is not a scintilla of evidence suggesting that Chief Judge Fusté and Judge Pérez-Giménez disregarded González's recusal arguments. They were addressed and rejected. (Docket No. 836.) González claims that Chief Judge Fusté granted his motion to access the penitentiary law library for nefarious reasons. (Docket No. 924 at p. 3.) According to González, Chief Judge Fusté understood that:

> when he ordered that the defendant be given access to the law library when nobody else was given access, it would be interpreted by the rest of the inmate population as if the defendant was given special treatment by the administration, and because of such belief [González's] life could be put in danger.

Id. Surmise and conjecture cannot sustain recusal. See In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir. 1989) ("[W]hen considering disqualification, the district court is not to use the standard of Caesar's wife, the standard of mere suspicion.") (internal question and citation omitted). A well-informed, reasonable person would not concur with González that Chief Judge

Fusté "recognized that he had a conflict of interest presiding over [this] case and disqualified himself."  (Docket No. 924 at p. 4.)  González attempts to manufacture an appearance of partiality where one does not exist.[10]

González conflates recusal with reassignment by citing McCuin v. Texas Power & Light Co., 714 F.2d 1255 (5th Cir. 1982). (Docket No. 924 at pp. 4, 8 and 13.)  In McCuin, the Fifth Circuit Court of Appeals held that "to permit a disqualified chief judge to select the judge who will handle a case in which the chief judge is disabled would violate the congressional command that the disqualified judge be removed from all participation in the case." 714 F.2d at 1261 (remanding case for random reassignment to eliminate the "suspicion that the disqualified judge will select

---

[10] González refers to conversations he allegedly had with "Mrs. Brill" in 2008. (Docket No. 924 at p. 2.)  Rachel Brill ("Brill") is an attorney and the wife of Chief Judge Fusté.  See United States v. Vázquez-Botet, 532 F.3d 37, 47 (1st Cir. 2008) (rejecting the defendant's argument that "Chief Judge Fusté's decision not to recuse himself in light of his wife's activities constitute[d] reversible error under 28 U.S.C. § 455(b)(5)(ii)").  González maintains that "Mrs. Brill informed [him] that she would speak to Chief Judge Fusté because there was a conflict of interest." (Docket No. 3.)  Although González fails to specify the conflict of interest referred to in his motion, he alludes to Ms. Brill's involvement in this action to imply bias.  Defense attorneys Jay Moskoitz and Graham Castillo represented González before and during his trial. (Docket Nos. 271 and 272.)  Defense attorney Rafael Castro-Lang also appeared on behalf on González.  The Court granted González's motion to appoint counsel "to represent González-González in his motion to reduce sentence."  (Docket Nos. 913 and 914.)  The record does not reflect that Ms. Brill represented González at any stage of this proceeding.  The First Circuit Court of Appeals noted that "Chief Judge Fusté [had] a standing order that Brill not appear as an attorney in any proceeding before him."  Vázquez-Botet, 532 F.3d at 48.  The Court rejects González's attempt to taint this action with unsubstantiated allegations regarding purported conflicts of interest from over a decade ago.

a successor whose views are consonant with his") (citation omitted). McCuin is inapposite, however, because Chief Judge Fusté did not disqualify himself. The motion to recuse insinuates the existence of a judicial cabal, an "unsupported, irrational, [and] highly tenuous speculation." See In re Martínez-Cátala, 129 F.3d at 220.

Chief Judge Fusté transferred this action to the undersigned judge in accordance with the Local Rules for the United States District Court for the District of Puerto Rico. In fact, the transfer of an action from one judge to another is a frequent, unremarkable occurrence. Local Rule 3A(a) provides that the "clerk shall assign cases to judges by lot, using the computerized case assignment system, in such a matter that each judge shall be assigned an equal number of cases by category." Local Rule 3A(a); see Obert v. Republic W. Ins. Co., 190 F. Supp. 2d 279, 290 (D.R.I. 2002) ("Although random assignment is an important innovation in the judiciary, facilitated greatly by the presence of computers, it is not a necessary component to the judge's impartiality."). An action may be reassigned, however, "by order of the judge affected, or by order of the Chief Judge with the consent of the

judge from whom transfer is to be made." Id.[11]  Indeed, Local Rule 3A(b) provides that:

> In the interest of justice, consolidation of cases, recusals, or to further the efficient performance of the business of the Court, a judge may return a case to the clerk for reassignment, whether or not the case is related to any other case, **or may transfer the case to another judge if the receiving judge consents to the transfer.**

Local Rule 3A(b) (emphasis added); see United States v. Casas, 376 F.3d 20, 23 (1st Cir. 2004) ("Reassignment of civil and criminal cases within a district court occurs regularly, for numerous reasons related to administrative convenience or necessity, and a litigant has no vested right to a particular judge.") (internal citation omitted).  No reasonable person would construe Chief Judge Fusté's order transferring this case to the undersigned judge as constituting evidence of bias.  See United States v. Champlin, 388 F. Supp. 2d 1177, 1185 (D. Haw. 2005) ("The mere fact of reassignment, therefore, does not create a reasonable question as to this court's impartiality under § 455(a).")  Accordingly, the transfer of this case to the undersigned judge fails to substantiate González's motion for recusal.

---

[11] Pursuant to 28 U.S.C. § 137, the "business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.  The chief judge of the district court shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and order do not otherwise prescribe." 28 U.S.C. § 137.

**C.   Judicial Decisions are Beyond the Scope of Sections 144 and 455**

González cites the Court's dispositive and administrative decisions as evidence of bias. (Docket No. 924 at p. 5.) Recusal is necessary, González argues, because the undersigned judge "[ignored] that there were motions pending" and "managed to control what parts of the records are sent to the Court of Appeals so the Honorable Court of Appeals won't have the whole records to make a fair judgment." Id. González claims that he "can't even get a favorable ruling from the Court to be permitted to use his name." Id.

Dissatisfaction with a Court's rulings and case management, however, is not a basis for recusal. The Supreme Court and First Circuit Court of Appeals have repeatedly held that "judicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion." Liteky v. United States, 510 U.S. 540 540 (citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)); In re United States, 441 F.3d at 65 ("[C]ourts will reject what appear to be strategic motions to recuse a judge whose rulings have gone against the party."); Giorgi, 840 F.2d at 1035 (holding that "the mere fact of an adverse ruling . . . does not - standing alone - create an inference of lack of partiality")

(citations omitted).[12]  Consequently, dissatisfaction with the Court's dispositions in this action does nothing to support González's request for recusal.

**IV. Conclusion**

For the reasons set forth above, González's motion to recuse is **DENIED**.  (Docket No. 924.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 27, 2019.

s/ Francisco A. Besosa  
FRANCISCO A. BESOSA  
UNITED STATES DISTRICT JUDGE

---

[12] See also, S.E.C. v. Loving Spirit Foundation, Inc., 392 F.3d 486, 494 (D.C. Cir. 2004) ("[W]e have found no case where this or any other federal court recused a judge based only on his or her rulings."); Glass v. Pfeffer, 849 F.2d 1261, 1268 (10th Cir. 1988) ("adverse rulings are not in themselves grounds for recusal"); Stone v. Baum, 409 F. Supp. 2d 1164, 1175 n.5 (D. Ariz. 2005) ("A judges' prior ruling in a case is absolutely not a basis for recusal.").